```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```
_____

|                              |   |                      |
|------------------------------|---|----------------------|
|                              | ) |                      |
| **UNITED STATES OF AMERICA,** | ) |                      |
|                              | ) |                      |
|     **Plaintiff,** | ) |           |
|                              | ) |                      |
| **v.**                       | ) | No. 15-20244-JTF-tmp |
|                              | ) |                      |
| **BRYCE WILLIAMS,**          | ) |                      |
|                              | ) |                      |
|     **Defendant.** | ) |          |
|                              | ) |                      |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference is defendant Bryce Williams's Motion to Suppress, filed on February 2, 2016. (ECF No. 27.) The government responded in opposition on February 16. (ECF No. 30.) Williams submitted a reply on February 23. (ECF No. 31.) In his motion, Williams seeks to suppress a firearm found during a search conducted by Trujul Boyd, a private security guard who was working at Peppertree Apartments ("Peppertree"). During the suppression hearing held on March 29, 2016, the court heard testimony from six witnesses and admitted into evidence two exhibits. Subsequently, on May 9, 2016, the court held an additional evidentiary hearing, at which time the court heard testimony from three witnesses and admitted into evidence three exhibits.

The court has now considered the memoranda of law filed in support of and in opposition to the motion to suppress, the testimony of the witnesses, the exhibits presented at the hearings, and the applicable law. The court hereby submits the following proposed findings of fact and conclusions of law, and recommends that the motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

### A. Peppertree's Anti-Trespassing Policy

At all times relevant to the events at issue, Peppertree contracted with D & S Security ("D & S"), a privately-owned company, to provide security services for its residents and guests. D & S's security guards were directed by Peppertree management to patrol the apartment complex on foot, address resident complaints, and enforce Peppertree's own anti-trespassing policy. According to Lynda Massey, Peppertree's property manager, Peppertree utilizes an authorization of agency ("AOA") list to enforce its anti-trespassing policy.[1] If Peppertree informs an individual that he or she is barred from Peppertree's property, his or her name is placed on the AOA list. The AOA list is provided to law enforcement officers by Peppertree and allows officers to arrest individuals on the list for trespassing if they are again found on Peppertree's

---

[1] A blank copy of Peppertree's AOA list was admitted into evidence as Exhibit 1 at the March 29 hearing.

property. Peppertree's anti-trespassing policy also gives its private security guards the authority to detain individuals on the AOA list who are found on the property until law enforcement officers are called to make an arrest.

During this same time period, Peppertree was also a participant in the Shelby County District Attorney General's Anti-Trespassing Program ("DAG Program"). The DAG Program grants law enforcement officers the authority to enter participating properties "for the purpose of arresting those found thereon who are not tenants, their family members or invited guests." (May 9 hearing, Exhibit 1). The DAG Program was established to combat crime in common areas of apartment complexes committed by individuals who trespass on the property. Under the DAG Program, if a property has sufficient signage to alert a reasonable person that he or she does not have the right to be on the property, law enforcement can arrest the person without additional warning. The DAG Program is not designed to address trespassing inside of apartment units, but rather is limited to the common areas of participating properties. The DAG Program is entirely separate and distinct from Peppertree's own anti-trespassing policy.

At the March 29 hearing, Massey testified that Peppertree was court ordered to participate in the DAG Program as a result

of a nuisance action brought against it in 2006.[2]  However, Paul Hagerman, an Assistant District Attorney General, testified at the May 9 hearing that Peppertree voluntarily joined the program in November of 2010.  Also at the March 29 hearing, Memphis Police Department ("MPD") Officer Jeremy Alexander testified that pursuant to the "Safeways Program," private security guards at Peppertree have the "authority of the police department" to arrest individuals for trespassing "if individuals are found on the property and they don't live on the property or they're not with any other leaseholders."  However, Janine Buchanan, the current Managing Director at Safeways Incorporated, an independent non-profit organization, testified at the May 9 hearing that Peppertree was not involved with the Safeways Program at the time of the events at issue.  The court credits the testimony of Hagerman and Buchanan on these points, and finds that Peppertree was not court ordered to participate in the DAG Program, voluntarily joined the DAG Program in 2010, and was not involved with the Safeways Program in February of 2015.

---

[2]The "verified petition for abatement of nuisance" brought against Peppertree by the District Attorney General in 2006 was admitted into evidence as Exhibit 2 at the May 9 hearing.  The lawsuit was resolved by way of a consent order, a copy of which was admitted into evidence as Exhibit 3 at the May 9 hearing. While the consent order outlined several measures Peppertree agreed to take to "enhance the future safety of tenants and other lawful residents," the order makes no mention about implementing an anti-trespassing program or policy.

**B.   Events of February 2, 2015**

On the evening of February 2, 2015, security guard Trujul Boyd, a supervisor with D & S, received a noise complaint regarding Apartment 8, a residence located in the Peppertree complex. According to Boyd, he and other D & S guards went to the apartment and knocked on the door. Once the female tenant opened the door, Boyd noticed five people inside the apartment.[3] Boyd asked the tenant if he and the other security guards could come inside. The tenant consented. Upon entering the apartment, Boyd smelled marijuana and observed marijuana on a table. Boyd spoke with one of the individuals, defendant Bryce Williams, and asked him for identification. After Williams produced his identification, Boyd informed Williams that he was on the AOA list and, as such, was barred from the property.[4]

---

[3]According to the narrative on the MPD record of arrest and Officer Alexander's testimony, when Boyd responded to the noise complaint, he saw Williams and two other males "standing in front of the apartment complex," rather than inside of the apartment. (March 29 hearing, Exhibit 2.) The court credits the testimony of Boyd and finds that the individuals he observed were actually inside the apartment, as opposed to standing outside. In any event, this factual discrepancy is immaterial to the determination of this motion.

[4]At the March 29 hearing, Boyd testified that when he initially looked inside the apartment, he immediately recognized Williams based on a previous encounter that he had with Williams, and knew that Williams was on Peppertree's AOA list. However, during cross-examination, Boyd testified that he gave a statement to MPD officers on the night of this incident, in which he stated that he had never seen Williams at Peppertree before the evening of February 2, 2015. The court finds that

- 5 -

Boyd proceeded to detain Williams by placing him in handcuffs. Subsequently, Boyd asked Williams "if he had anything on him," to which Williams responded that he had a gun. Boyd then asked Williams for consent to search his person to ensure the security officers' safety. Williams consented, at which time Boyd retrieved the gun from Wililams's waistband. Boyd then escorted Williams in handcuffs to Peppertree's leasing office and called MPD to come arrest him for trespassing. MPD Officers Alexander and Artez Davis responded to the call and arrested Williams after running a background check, which revealed that he had seven previous felony convictions.

**C. Motion to Suppress**

In his motion to suppress, Williams argues that "by virtue of the District Attorney's Anti-Trespassing program, the police were instigating and encouraging the security guards' search" of Williams. Specifically, Williams argues that the DAG Program encourages apartment complexes to become members and then authorizes their security guards to arrest individuals who are not lawful residents or invited guests found on the properties. Williams also contends that the DAG Program permits security guards to act as "police surrogates" by authorizing them to conduct arrests and searches while simultaneously avoiding the

---

this inconsistency is immaterial to the determination of this motion.

warrant requirement of the Fourth Amendment. He further alleges that Boyd engaged in the search of his person with the intent of assisting the police in their investigative efforts. Additionally, Williams argues that the warrantless search of the apartment and his person were unreasonable, because they were conducted without a warrant and without a valid exception to the warrant requirement. Alternatively, Williams argues that even if the guards could lawfully enter the apartment without a warrant, the guards did not have reasonable suspicion to detain him, nor did they have probable cause to arrest him.

In its response in opposition, the government argues that Boyd was not acting as an agent of the government when he entered the apartment and searched Williams. The government asserts that "the fact that both the Peppertree Apartment complex and the MPD may have a common goal of enforcing criminal trespass laws does not transform Mr. Boyd into a government agent." In the alternative, the government argues that if the court determines that Boyd was acting as a government agent, he had reasonable, articulable suspicion of criminal activity to detain Williams. Lastly, the government contends that Williams lacks "standing" to challenge Boyd's entry into the apartment, because he has not established that he had a legitimate expectation of privacy in the apartment. In his reply in support of his motion, Williams argues that he "unquestionably

has standing to challenge any searches and seizures pertaining to his person," because "the Fourth Amendment protects people, not places."

## II. PROPOSED CONCLUSIONS OF LAW

### A. Reasonable Expectation of Privacy

The government argues that Williams has no "standing" to challenge Boyd's entry into the apartment, because he has not established that he had a legitimate expectation of privacy in the apartment.[5] "When challenging the admission of evidence under the Fourth Amendment, it is the defendant's burden to show that he had a legitimate expectation of privacy in the area searched or items seized." United States v. Mathis, 738 F.3d 719, 729 (6th Cir. 2013) (citing United States v. Mastromatteo, 538 F.3d 535, 544 (6th Cir. 2008)). If the defendant does not meet this burden, he "lacks standing for his challenge." Id. In order to establish standing, a defendant "must demonstrate that he personally has an expectation of privacy in the place

---

[5]The Sixth Circuit has recognized that "[s]tanding to challenge a search or seizure is a matter of substantive Fourth Amendment law rather than of Article III jurisdiction." United States v. Dyer, 580 F.3d 386, 390 (6th Cir. 2009) (citation and internal quotation marks omitted); see also United States v. Smith, 263 F.3d 571, 581–82 (6th Cir. 2001) (explaining that although the inquiry into whether a defendant has the right to challenge a search under the Fourth Amendment is often referred to as a question of "standing," the issue is actually one of substantive Fourth Amendment law and whether a defendant can prove a legitimate expectation of privacy as a prerequisite to challenging police conduct).

searched, and that his expectation is reasonable . . . ." United States v. Noble, 762 F.3d 509, 526 (6th Cir. 2014) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)). To meet this requirement, "the defendant must show (1) that he had a subjective expectation of privacy, and (2) that his expectation was objectively reasonable." United States v. Washington, 573 F.3d 279, 282-83 (6th Cir. 2009) (citing United States v. Pollard, 215 F.3d 643, 647 (6th Cir. 2000)). "An expectation is objectively reasonable only when it is one that society is prepared to recognize as legitimate." Id. (internal quotation marks omitted).

Two "searches" took place in this case – the initial entry into the apartment by the private security guards and the subsequent search of Williams's person. The Sixth Circuit has held that "[a] person may acquire a reasonable expectation of privacy in property in which he has neither ownership nor any other legal interest." United States v. Washington, 573 F.3d 279, 283 n.1 (6th Cir. 2009) (citing Minnesota v. Olson, 495 U.S. 91, 96-97 (1990) (holding that a person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable")). In certain cases, courts have even extended the ability to challenge a search to non-overnight guests who kept personal items in the residence searched. Id.;

see also United States v. Waller, 426 F.3d 838, 844 (6th Cir. 2005) (holding that a person who was never an overnight guest could challenge the search of his luggage bag in a friend's apartment where he showered, changed clothes, and kept some personal belongings). However, the Sixth Circuit has also held that temporary visitors to a residence do not possess a legitimate expectation of privacy in the residence. United States v. Harris, 255 F.3d 288, 294 (6th Cir. 2001).

The court finds that Williams has not established that he had a reasonable expectation of privacy in the apartment. Williams did not claim that he had a reasonable expectation of privacy in the apartment in his motion or reply brief, nor did he present any evidence at either hearing to establish standing. Therefore, Williams does not have the authority to challenge the entry into the apartment. See e.g., United States v. Haynes, 108 F. App'x 372, 375 (6th Cir. 2004) (finding that defendant had no legitimate expectation of privacy because he "failed to establish any meaningful connection to the property searched"); United States v. Talley, 275 F.3d 560, 563 (6th Cir. 2001) (holding that defendant lacked "standing" to challenge legality of officer's entry into apartment because he "presented no evidence that he had been in the apartment for any period of time or for any purpose that would give rise to his having a legitimate expectation of privacy in that apartment"); United

States v. Jones, 147 F. Supp. 2d 752, 758 (E.D. Mich. 2001) (finding that Jones had no "standing" to challenge search because he "adduced no evidence that he had a subjective expectation of privacy" in the property searched). However, Williams "unquestionably has standing to challenge any searches and seizures pertaining to his person," and therefore, may challenge the seizure of the handgun from his waistband. United States v. Square, 790 F. Supp. 2d 626, 644 n.3 (N.D. Ohio 2011); See also United States v. Jones, No. 3:06-CR-149, 2007 WL 3047120, at *9 (E.D. Tenn. Oct. 16, 2007) (stating that "case law dictates that, even when the defendant lacks standing to challenge the search of the general premises surrounding his person, he still has standing to contest the search of himself"); United States v. Thornton, 493 F. Supp. 2d 1024, 1031 (S.D. Ohio 2007) (holding that "it is self-evident that the Defendant had a legitimate expectation of privacy in his person and, thus, may challenge the search of himself").

**B.   Motion to Suppress**

Williams moves to suppress the firearm on the grounds that Boyd, acting as an agent of the government, violated his Fourth Amendment rights. "The Fourth Amendment proscribes only governmental action and does not apply to a search or seizure conducted by a private individual — no matter how unreasonable — unless that individual is acting as an agent of the government."

United States v. Jones, No. 2:13-CR-20157-SHL-dkv, 2014 WL 3853594, at *2 (W.D. Tenn. Aug. 5, 2014) (order adopting Report and Recommendation) (citing United States v. Jacobsen, 466 U.S. 109, 113 (1984)). A private person such as Boyd may be considered an agent of the government, and thus subject to the requirements of the Fourth Amendment, under certain circumstances. See Skinner v. Railway Labor Execs. Ass'n, 489 U.S. 602, 614 (1989). Whether a private person's conduct can be attributed to the government "turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved 'in light of all the circumstances.'" United States v. Booker, 728 F.3d 535, 541 (6th Cir. 2013) (quoting Skinner, 489 U.S. at 614-15). In making this assessment, the Sixth Circuit has applied a two-part test: "[f]irst, the police must have instigated, encouraged or participated in the search," and "[s]econd, the individual must have engaged in the search with the intent of assisting the police in their investigative efforts." United States v. Lambert, 771 F.2d 83, 89 (6th Cir. 1985) (citing United States v. Howard, 752 F.2d 220, 227 (6th Cir. 1985)); see also United States v. Hardin, 539 F.3d 404, 419 (6th Cir. 2008) (stating that the critical factors to consider are "'(1) the government's knowledge or acquiescence, and (2) the intent of the party performing the search'") (quoting Howard, 752 F.2d at 227).

This court recently applied the Lambert test in United States v. Jones, No. 13-20157-SHL-dkv, ECF No. 57 (W.D. Tenn. May 28, 2014) (unpublished Report and Recommendation). Similar to the present case, Jones involved an apartment complex in Memphis, Cambridge Court, which hired private security guards to stop all individuals walking on its property to identify whether the person was a guest or a resident. Id. at *5. When security guards at Cambridge Court would stop an individual, they would ask for identification and then run an online search to see whether the person had an outstanding warrant for his or her arrest. If the individual had an outstanding warrant, the security guard would contact an MPD officer to transport the person to the police station. The purpose of this policy was "to prevent trespass and to reduce the incidence of crime on the premises." Id. at *12. On November 19, 2012, defendant Omar Jones was stopped by security guard Mark Hale on Cambridge Court property. When Jones was unable to produce identification, Hale performed a pat down of Jones for his own safety and discovered a handgun in Jones's back pocket. Hale then detained Jones while he flagged down an MPD officer who happened to be at Cambridge Court responding to an unrelated domestic call. Hale held Jones until the MPD officer finished his other call, at which time the officer transported Jones to jail.

Jones sought to suppress the firearm on the grounds that Hale acted as an agent of the MPD, because Cambridge Court security guards and MPD officers worked in the same areas, and the security guards' "detention of persons leads to their arrest by the MPD." Id. at *13. Chief Magistrate Judge Diane Vescovo applied the Lambert test and determined that Hale did not act as an agent of the government in searching Jones. She reasoned that there was "no evidence that the MPD instigated, encouraged, or participated in the search of Jones, nor did it know of or acquiesce to Hale's search of Jones." Id. at *12. She further found that Hale's intent in searching Jones was to comply with Cambridge Court policy and to protect his own safety. Id. at *13. Based on these findings, Judge Vescovo issued a Report and Recommendation recommending that Jones's motion to suppress be denied. Her recommendation was adopted by the district judge, who ultimately denied Jones's motion. Jones, No. 2:13-CR-20157-SHL-dkv, 2014 WL 3853594, at *2.

Another factually analogous case, United States v. Brooks, No. 3:13-CR-00017, 2014 WL 413933 (M.D. Tenn. Feb. 4, 2014), was recently decided by the United States District Court for the Middle District of Tennessee. In that case, the Fallbrook Apartments in Nashville, Tennessee, contracted with a private security firm, Tennessee Protection Agency ("TPA"), to enforce Fallbrook's anti-trespassing policy. Pursuant to this policy,

Fallbrook maintained a "Criminal Trespass List," which listed individuals who were barred from the property because they had engaged in criminal activity or had otherwise engaged in disruptive activity on Fallbrook property. Id. at *2. Also pursuant to the anti-trespassing policy, TPA guards maintained a security checkpoint at Fallbrook's entrance. At the checkpoint, TPA guards would stop cars entering the property and ask for identification of the individuals in the car. The guards would then check to see if the individuals were on the Criminal Trespass List. If an individual in a car was on the Criminal Trespass List, TPA officers would have the individual step out of the car, at which point TPA officers would detain the attempted trespasser until a Metro Nashville Police Department ("MNPD") police officer arrived. Id.

Defendant Charles Brooks was a passenger in a car that was stopped by two TPA guards at the Fallbrook checkpoint. When the car approached the checkpoint, a TPA guard saw Brooks, who was in the backseat, throw a marijuana cigarette out of the window. One of the TPA guards drew his weapon as a precautionary measure, and the car stopped. Id. at *3. During the time of these events, an MNPD officer happened to be at Fallbrook issuing an unrelated citation. While he was issuing the citation, he heard "commotion" at the checkpoint and went to assist the TPA guards. One of the TPA guards observed a bag of

marijuana and pointed it out to the MNPD officer, who subsequently arrested Brooks. Brooks sought to suppress the evidence retrieved during the stop on the basis that the TPA guards acted as agents of the government. In applying the Lambert test, the court found that the TPA guards "did not conduct the stop at the instigation or encouragement of law enforcement; instead, they did so in the normal course of their duties as TPA security personnel, who were charged with enforcing the Criminal Trespass List" at Fallbrook. Id. at *8. The court also found that the TPA officers "were not seeking to assist the police in crime prevention and investigation efforts" when they stopped the car. Id. at *9. Rather, the court explained that the TPA officers "were enforcing *their employer's* interest in enforcing the Criminal Trespass List and in keeping Fallbrook free from trespassers and criminal activity on the premises." Id. (emphasis in original). The court ultimately denied Brooks's motion to suppress. Id. at *15.

Similar to Jones and Brooks, in the present case there is no evidence that the MPD or any law enforcement agency instigated, encouraged, or participated in Boyd's search of Williams, nor is there any evidence that any law enforcement agency knew about or acquiesced in the search. Boyd testified that the reason he detained Williams was because he was on Peppertree's AOA list. The AOA list was used to enforce

Peppertree's own anti-trespassing policy, which was carried out by private security guards. Boyd testified that he was directed by Peppertree's property manager to enforce Peppertree's anti-trespassing policy. He further testified that he searched Williams for weapons after detaining him for his own safety, as was his normal procedure when he detained someone for trespassing. The fact that MPD officers responded when Boyd alerted them of Williams's trespassing "does not establish 'encouragement' – it merely establishes that the [MPD] was fulfilling its obligation to respond to complaints from private citizens and property owners about criminal activity." Brooks, No. 3:13-CR-00017, 2014 WL 413933, at *8. Moreover, the fact that Peppertree participates in the DAG Program does not establish that the MPD somehow instigated, encouraged, or participated in the search.

Additionally, there is no evidence that Boyd detained and searched Williams with the intent of assisting law enforcement officers in their investigative efforts. Rather, as Boyd testified, he detained Williams because he was on Peppertree's AOA list and had been previously barred from the property. As mentioned above, Boyd searched Williams to ensure his own safety. Boyd's testimony demonstrates that his intent in complying with Peppertree's anti-trespassing policy and protecting his own safety was entirely independent of any intent

- 17 -

the MPD later formed in collecting Williams's firearm and arresting him for being a felon in possession of a firearm. See Jones, No. 13-20157-SHL-dkv, ECF No. 57, at *13. Based on the totality of the circumstances, the court finds that Boyd did not act as an agent of the government in detaining and searching Williams, and thus, was not subject to the requirements of the Fourth Amendment. Therefore, it is recommended that Williams's motion to suppress be denied. See, e.g., United States v. Day, 591 F.3d 679, 684-86 (4th Cir. 2010) (applying same two-part test recognized by Sixth Circuit and holding that Virginia's regulatory scheme permitting private security guards to arrest individuals, in the absence of more active government participation or encouragement, was insufficient to implicate Fourth Amendment protections); United States v. Jones, 2014 WL 3853594, at *2 (holding that defendant failed to meet his burden of showing that the police instigated, encouraged, or participated in the search of his person, or that the private security guard engaged in the search with the intent of assisting the police); Brooks, 2014 WL 413933, at *8-9 (holding that private security guards did not act as agents of the police department by enforcing apartment complex's "Criminal Trespassing List").

### III. RECOMMENDATION

For the above reasons, the court recommends that Williams's motion to suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

June 24, 2016
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**